**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-10586 |
| Plaintiff - Appellee, | D.C. No. CR 12-01471-TUC-FRZ |
| v. | |
| CARLOS POOM-MEDINA, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Frank R. Zapata, Senior District Judge, Presiding

Argued and Submitted April 14, 2015
San Francisco, California

Before: KOZINSKI and GRABER, Circuit Judges, and PONSOR,[**] Senior
District Judge.

Defendant challenges his 2013 convictions for possession of a firearm as an

alien, in violation of 18 U.S.C. §§ 922(g)(5)(a) & 924(a)(2), and illegal reentry

after deportation, in violation of 8 U.S.C. § 1326(a). Defendant contends that the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Michael A. Ponsor, Senior United States District Judge for the District of Massachusetts, sitting by designation.

district court erred in denying his motion to suppress certain physical evidence (a firearm) and statements made by him to officers. We affirm.

We review *de novo* the district court's denial of a suppression motion. *United States v. Jones*, 286 F.3d 1146, 1150 (9th Cir. 2002). We review the district court's underlying factual finding that Defendant voluntarily consented to the entry and search under a clearly erroneous standard. *Id.*

1.     The district court properly denied Defendant's motion to suppress. "[A] search conducted pursuant to a valid consent is constitutionally permissible." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). The district court's finding that Defendant consented to the agents' request to enter his home and search for illegal aliens did not constitute clear error. The district court correctly applied the five guidepost factors set forth in *United States v. Patayan Soriano*. 361 F.3d 494, 502 (9th Cir. 2004) (considering (1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified that he had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained). The record amply demonstrated that the agents, upon confronting Defendant after he opened the door, identified themselves, never drew their weapons or threatened Defendant, observed Defendant to be calm, and obtained his voluntary consent to

2

enter and search the premises. Unlike the defendant in *Florida v. Jardines*, 133 S. Ct. 1409 (2013), here Defendant was at home and affirmatively consented to a search before the officers began looking for any evidence. Given those facts, the time of day and location of the door are insufficient to support a conclusion that the district court's finding of voluntariness was clearly erroneous. Under the totality of the circumstances, Defendant freely and voluntarily gave his consent. *Schneckloth*, 412 U.S. at 222.

2.     If a defendant does not limit the scope of his consent to a search, the limits of the search extend to what is objectively reasonable or what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Defendant argues that even if he did consent to a search, the fruits of that search nonetheless should have been suppressed because the agents exceeded the scope of his consent when they looked in a closet and discovered a firearm. The record is clear that Defendant never limited the scope of his consent to a specific area of the house. Agents did not breach any constitutional boundary by investigating the closet, because the closet was large enough to hide an illegal alien, and a reasonable person would have understood the request to search the house to include that area. Thus, the search of the closet was constitutionally permissible. The seizure of the

3

firearm was also permissible because a firearm, within a dwelling that officers reasonably suspect is a stash house, has an "incriminating character [that] is immediately apparent." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993); *see also United States v. Stafford*, 416 F.3d 1068, 1076-77 (9th Cir. 2005).

3. The district court properly denied Defendant's motion to suppress his statements on *Miranda* grounds. An officer's obligation to give a suspect *Miranda* warnings before interrogation extends only to those instances where the individual is "in custody." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam). To determine whether an individual is in custody, a court must examine all of the objective circumstances surrounding the interaction. *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). In this case, one agent, for security purposes, remained near Defendant in an area slightly apart from where the search occurred, while other officers performed the brief search. Defendant was not in custody, and it was not error to admit statements made by Defendant during this time. Only after Defendant corrected his previous lie and admitted he was not a U.S. citizen did the agents arrest him and place him in custody. Here, *Miranda* warnings were not required until he was arrested. *Mathiason*, 429 U.S. at 495.

**AFFIRMED.**

4